**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORENT TECHNOLOGY, INC.,<br>Plaintiff,<br>v.<br>AMAZON WEB SERVICES, INC.,<br>Defendant. | Case No.: 8:26-cv-00194-JVS-(DFMx)<br>**STIPULATED PROTECTIVE ORDER** |
| AMAZON WEB SERVICES, INC. and AMAZON TECHNOLOGIES, INC.,<br>Counterclaim Plaintiffs,<br>v.<br>CORENT TECHNOLOGY, INC.,<br>Counterclaim Defendant. | Hon. Douglas F. McCormick |

## 1. PURPOSES AND LIMITATIONS

Because discovery in this action will involve production of confidential, proprietary, or private information for which special protection from public disclosure and from use for any purpose other than prosecuting this litigation may be warranted, this Court enters the following Protective Order. This Order does not confer blanket protections on all disclosures or responses to discovery. The protection it affords from public disclosure and use extends only to the limited information or items that are entitled to confidential treatment under the applicable legal principles. Further, as set forth in Section 13.7, *infra*, this Protective Order

does not entitle the parties to file confidential information under seal. Rather, when the parties seek permission from the court to file material under seal, the parties must comply with Civil Local Rule 79-5 and with any pertinent orders of the assigned District Judge and Magistrate Judge.

**2. GOOD CAUSE STATEMENT**

Discovery in this action is likely to require production of trade secrets, proprietary source code, product architecture and design information, financial data, customer and business information, and other competitively sensitive material for which special protection from public disclosure and from use for any purpose other than the prosecution and defense of this action is warranted. Corent's confidential material includes, among other things, proprietary source code, technical documentation, and business, financial, and strategic information relating to its SaaS application migration and containerization technology. Amazon's confidential material includes, among other things, proprietary source code, technical documentation, and business, financial, and strategic information relating to the Amazon Web Services products and services accused in this action. Because the parties are commercial competitors and discovery will necessarily involve highly sensitive technical and financial information central to the claims and defenses at issue, disclosure or use of such information for any purpose other than this litigation would cause significant competitive and economic harm that could not be avoided by less restrictive means. Accordingly, to expedite the flow of discovery material, facilitate the prompt resolution of disputes over the confidentiality of discovery material, adequately protect information the parties are entitled to keep confidential, ensure that the parties are permitted reasonably necessary uses of such material in preparing for and conducting this litigation, and address the proper handling of such material at the conclusion of this litigation, entry of this Protective Order is warranted and serves the interests of justice. It is the intent of the parties that Discovery Material

will not be designated as Protected Information for tactical reasons, that no such designation will be made absent a good faith belief that the material has been maintained in a confidential, non-public manner, and that good cause exists why such material should not become part of the public record of this action.

**3. DEFINITIONS**

3.1 Affiliate: The term "Affiliate" shall mean an entity that is directly or indirectly a parent of, subsidiary of, or commonly owned by, a party.

3.2 CONFIDENTIAL: The term "CONFIDENTIAL" shall mean any Discovery Material designated by a Producing Party as "CONFIDENTIAL" that the Producing Party claims in good faith constitutes, contains, reveals, or reflects: (i) non-public technical, marketing, financial, sales, research and development information; (ii) commercially sensitive competitive information, including, without limitation, information obtained from a nonparty pursuant to a current Nondisclosure Agreement ("NDA"); (iii) information or data relating to future products not yet commercially released and/or strategic plans; (iv) commercial agreements, settlement agreements, or settlement communications, the disclosure of which is likely to cause harm to the competitive position of the Producing Party; or (v) sensitive personal information that is protected under federal, state, or foreign data protection laws or regulations, or other privacy obligations.

3.2.1 The following information is not CONFIDENTIAL:

3.2.1.1 Any information that is, or after its disclosure to a Receiving Party, part of the public domain as a result of publication not involving a violation of this Order or other obligation to maintain the confidentiality of such information;

3.2.1.2 Any information that the Receiving Party can show was already publicly known prior to the disclosure; and

3.2.1.3 Any information that the Receiving Party can show by written records was received by it from a source who obtained the information lawfully and under no obligation of confidentiality to the Producing Party.

3.3 HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY: The term "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" shall mean highly sensitive "CONFIDENTIAL" Discovery Material, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means.

3.4 HIGHLY CONFIDENTIAL—SOURCE CODE: The term "HIGHLY CONFIDENTIAL—SOURCE CODE" shall mean highly sensitive "CONFIDENTIAL" Discovery Material constituting Source Code.

3.5 Discovery Material: The term "Discovery Material" shall mean any Document (as defined below), material, item, testimony, or thing filed with or presented to the Court or produced, served, or generated during this action, including, for example, exhibits, answers to interrogatories, responses to requests for admissions, responses to requests for production, subpoenas, declarations, affidavits, and deposition testimony or transcripts, and all copies, extracts, summaries, compilations, designations, and portions thereof.

3.6 Document: The term "Document" shall mean every means of recording any form of communication or representation upon any tangible thing, including letters, numbers, words, pictures, sounds, or symbols, or combinations thereof, whether recorded by handwriting, printing, photostatic or photographic means, magnetic impulse, tape, computer disk, CD-ROM or any other form of electronically stored information, and all other tangible things which come within the meaning of "writing" contained in Rule 1001 of the Federal Rules of Evidence, or within the meaning of "document" or "tangible thing" contained in Rule 34 of the Federal Rules of Civil Procedure.

3.7 Producing Party: The term "Producing Party" shall mean any party to this action or any third party, including their respective counsel, retained Experts, directors, officers, employees, or agents, who produce any Discovery Material.

3.8 Receiving Party: The term "Receiving Party" shall mean any party to this action, including its counsel, retained Experts, directors, officers, employees, or agents, who receives any Discovery Material in this action.

3.9 Non-Party: The term "Non-Party" shall mean any natural person, partnership, corporation, association, or other legal entity not named as a Party to this action.

3.10 Expert: The term "Expert" shall mean independent outside expert witnesses or consultants (i.e., not employees of a party) retained for this action with whom counsel may deem it necessary to consult.

3.11 Protected Information: The term "Protected Information" refers collectively to Discovery Material designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE."

3.12 Scope: The scope of this Order shall be understood to encompass not only Protected Information which is expressly designated as "CONFIDENTIAL" or "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE," but also any information derived therefrom, including all copies, excerpts, and summaries thereof, whether partial or complete, as well as testimony and oral conversations which reveal all or part of that information.

3.13 Source Code: A Producing Party may designate as "HIGHLY CONFIDENTIAL—SOURCE CODE" Discovery Material representing or constituting human-readable programming language text that defines or otherwise describes the algorithms or structure of software or firmware, (hereinafter referred to

as "Source Code"). Source Code includes source code files, which are text files containing source code. Source Code files include, but are not limited to, register transfer language, firmware, and hardware description language, as well as any and all programmer notes, annotations, and other comments of any type related thereto and accompanying the code. For avoidance of doubt, Source Code includes, but is not limited to, source files, configuration files, ".include files," "make" files, link files, intermediate output files, executable files, header files, resource files, library files, module definition files, map files, object files, linker files, browse info files, debug files, and files containing source code written in C, C++, Java, assembler, VHDL, Verilog, SQL, digital signal processor (DSP) programming languages, and any other human-readable text files used in the generation and/or building of software directly executed on a microprocessor, microcontroller, or DSP. Non-human-readable files, including but not limited to binary executable files, object code files, microcode, register transfer language, compilers and linkers, if produced, shall be afforded the same protection as the Source Code defined in this section. Revision histories or formulas that define or otherwise describe in detail the algorithms or structure of software, disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that could not be avoided by less restrictive means, shall also be afforded the same protection as the Source Code defined in this section. Documents describing how Source Code operates will not be stamped as HIGHLY CONFIDENTIAL—SOURCE CODE solely for the purpose of limiting access under Section 4.3, *infra*. To the extent documents (for example, PowerPoints or Word documents) contain lines of Source Code, the Producing Party may elect to redact the lines of Source Code in the document—labeled "Redacted Source Code"—and will otherwise produce the document in the normal course of discovery. In the event the Producing Party elects to redact Source Code from documents, the non-redacted

versions of those documents will be placed on the Source Code Computer for review by the Receiving Party.

**4. INFORMATION SUBJECT TO THIS ORDER**

4.1 Discovery Material designated as "CONFIDENTIAL" will be treated as follows:

4.1.1 Any Discovery Material designated as "CONFIDENTIAL" obtained by any party from any person pursuant to discovery in this litigation may be used only for purposes of this litigation.

4.1.2 Any document or tangible thing containing or including any Discovery Material designated as "CONFIDENTIAL" may be designated as such by the Producing Party by marking it "CONFIDENTIAL."

4.1.3 All Discovery Material designated as "CONFIDENTIAL" not reduced to documentary, tangible or physical form, or which cannot be conveniently designated as set forth in Section 4.1.2, *supra*, shall be designated by the Producing Party by informing the Receiving Party of the designation in writing.

4.1.4 Any document (or physical object) made available for inspection by counsel for the Receiving Party prior to producing copies of selected items shall initially be considered, as a whole, to constitute Discovery Material designated as "CONFIDENTIAL" (unless otherwise designated at the time of inspection) and shall be subject to this Order. Thereafter, the Producing Party shall have a reasonable time to review and designate the appropriate documents as "CONFIDENTIAL" (or otherwise as appropriate) prior to furnishing copies to the Receiving Party.

4.1.5 Unless otherwise ordered by the Court or permitted in writing by the Designating Party, a Receiving Party may disclose any information or item designated as "CONFIDENTIAL" only to:

a) The Receiving Party's Counsel, as well as employees of said Counsel to whom it is reasonably necessary to disclose the information for purposes of this action;

b) The officers, directors, and employees (not including in-house counsel) of the Receiving Party to whom disclosure is reasonably necessary for purposes of the action, provided that they have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A);

c) Up to and including two (2) in-house counsel of the Receiving Party to whom disclosure is reasonably necessary for purposes of this action, provided that such in-house counsel has signed the "Acknowledgment and Agreement to Be Bound" (Attachment A) and provided that, for each such in-house counsel, the Receiving Party provides to the Designating Party the attorney's name and a copy of the executed Attachment A at least seven (7) days prior to any disclosure of "CONFIDENTIAL" information;

d) Experts of the Receiving Party and their professional staff, (1) to whom disclosure is reasonably necessary for this litigation, (2) who have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A), and (3) as to whom the procedures set forth in Section 5.2, *infra*, have been followed;

e) The Court and its personnel;

f) Independent litigation support services, including persons working for or as court reporters, graphics or design services, jury or trial consulting services, and photocopy, document imaging, and database services retained by Counsel and reasonably necessary to assist Counsel with the litigation of this action;

g) Mock jurors who have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A);

h) During their depositions, witnesses of a Designating Party in the action to whom disclosure is reasonably necessary and who have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A), unless otherwise agreed by the Designating Party or ordered by the Court;

i) The author or recipient of a document containing the information or a custodian or other person who otherwise possessed or knew the information; and

j) Any mediator or settlement officer who is assigned to this matter, and their supporting personnel, mutually agreed upon by the parties engaged in settlement discussions.

4.2 In addition to the protections in Section 4.1, *supra*, Discovery Material designated as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY" or "HIGHLY CONFIDENTIAL—SOURCE CODE" and information contained therein shall be available only to:

4.2.1 Subject to Section 6, *infra*, outside litigation counsel of record for this action and supporting personnel employed in the law firm(s) of outside litigation counsel of record, such as attorneys, paralegals, legal translators, legal secretaries, and legal clerks.

4.2.2 Subject to Section 6, *infra*, Experts and their necessary support personnel, subject to the provisions of Section 5, *infra*, and who have signed the form attached hereto as Attachment A.

4.2.3 The Court, its personnel, jurors, and stenographic reporters (under seal or with other suitable precautions determined by the Court);

4.2.4 Independent litigation support services reasonably necessary to assist counsel with the litigation of this action, including legal translators retained to translate in connection with this action; independent stenographic reporters and videographers retained to record and transcribe testimony in connection with this action; graphics, translation, or design services retained by counsel for purposes of preparing demonstrative or other exhibits for deposition, trial, or other court proceedings in this action; independent litigation and eDiscovery support personnel retained in connection with this action; and jury or trial consulting services, including mock jurors who have signed the "Acknowledgment and Agreement to Be Bound" (Attachment A), except that mock jurors shall not have access to Source Code; and,

4.2.5 Any mediator or settlement officer who is assigned to this matter, and their supporting personnel, mutually agreed upon by the parties engaged in settlement discussions.

4.3 <u>Source Code</u>

4.3.1 **Treatment of Source Code**. To the extent that any party wishes to obtain access to Protected Information designated as "HIGHLY CONFIDENTIAL—SOURCE CODE," the following procedures shall apply:

4.3.2 The Producing Party shall make Protected Information designated as "HIGHLY CONFIDENTIAL—SOURCE CODE" available for inspection on one or more stand-alone, non-networked personal computers running a reasonably current version of the Microsoft Windows operating system (each a "Source Code Computer," and, if more than one, collectively, the "Source Code Computer(s)"). A second Source Code Computer may be provided at the same location at the Receiving Party's request to accommodate simultaneous review by multiple reviewers. References in this Order to the Source Code Computer shall, where the context requires, be read to include more than one Source Code Computer. The Source Code Computer shall have disk encryption and be password protected.

The Source Code Computer shall be locked down so that peripheral devices cannot be connected to the Source Code Computer by the Receiving Party except that the Producing Party shall accommodate reasonable requests by the Receiving Party to make available peripheral devices that cannot access the Internet including a mouse, keyboard, or external display monitor for use with the Source Code Computer. The Source Code Computer will be configured by the Producing Party to run software utilities which will allow counsel and Experts to view, search, or analyze the Source Code, including at least Notepad++, Acrobat for PDF, Microsoft Office, Grep, PowerGrep, Understand, Visual Slick Edit, Source-Navigator, ExamDiff Pro, Beyond Compare, and/or Cygwin. Neither party shall install tools capable of compiling or executing source code on the Source Code Computer. Neither party shall use any software tools or applications on the Source Code Computer powered by or leveraging artificial intelligence or machine learning that automatically scan, analyze, or provide feedback on source code. The Producing Party shall accommodate reasonable requests by the Receiving Party that other mutually agreeable commercially available software tools for viewing and searching Source Code be installed on the Source Code Computer, provided that such other software tools are reasonably available to the Producing Party, non-destructive to the source code, and reasonably necessary for the Receiving Party to perform its review of the Source Code consistent with all the protections herein. The Receiving Party must provide the Producing Party with the licensed software tools at least three (3) business days in advance of the date upon which the Receiving Party wishes to have the additional software tools available for use on the Source Code Computer. Such tools can be provided by any reasonable method including a link or other means not requiring the transfer of physical media.

4.3.3 The Producing Party shall make the Source Code available electronically and in text searchable form in a secure room at a U.S. office of its

outside counsel for the Producing Party or a mutually agreed alternative location. The Producing Party shall notify the Receiving Party when any files are removed, modified, or added to the Source Code Computer.

4.3.4 The Source Code Computer shall be made available to a Receiving Party for the inspection of Source Code from 9:00 am to 5:30 pm (in the time zone where the Source Code Computer is made available), Monday through Friday (excluding holidays), and any other mutually agreed upon days and/or times, upon reasonable request until the close of fact and expert discovery in this action.

4.3.5 For the first day that counsel for the Receiving Party requests a review of the Source Code Computer, it must give at least five (5) business days' notice to counsel for the Producing Party that it will be sending individual(s) authorized to review the Source Code made available on the Source Code Computer. The Receiving Party shall provide two (2) days' notice prior to any additional inspections. Each notice shall include the name and title for every individual who will attend the review. Access shall be limited to outside counsel and up to three (3) Experts (i.e., not existing employees or affiliates of a Party or an affiliate of a Party or competitor identified by the Producing Party with reasonable specificity), not including three (3) individuals working at the direction of each such Expert who have been disclosed pursuant to Section 5.2.5 and to whom the Producing Party has not timely objected, retained for the purpose of this litigation and approved to access such Protected Information pursuant to Section 4.2, *supra*, subject to the restrictions set forth in Section 5, *infra*. Mock jurors shall not have access to Source Code. In addition, access to the Source Code Computer shall be limited to outside counsel and up to the same three (3) Experts, not including three (3) individuals working at the direction of each such Expert who have been disclosed pursuant to Section 5.2.5 and to whom the Producing Party has not timely objected. To the extent that an Expert has accessed the Source Code Computer but subsequently withdraws from the case

or otherwise becomes unable to continue work on the matter, the Receiving Party may designate a replacement Expert, who shall be subject to the same restrictions set forth in this protective order.

4.3.6 Proper identification of all authorized persons shall be provided prior to any access to the secure facility or the Source Code Computer. Proper identification is hereby defined as a photo identification card sanctioned by the government of a U.S. state or by the United States federal government. Access to the secure facility or the Source Code Computer may be denied, at the reasonable discretion of the Producing Party, to any individual who fails to provide proper identification. The Producing Party shall maintain a Source Code access log identifying, for each and every time any Source Code is viewed, accessed, or analyzed: (1) the name of each person who accessed the Source Code; (2) the date and time of access; (3) the length of time of access; and (4) whether any hard copies of any portion of Source Code were printed.

4.3.7 Use or possession of any outside electronic input/output device (e.g., USB memory stick, mobile phone, tablet, personal digital assistants, voice recorders, camera or any camera enabled device, optical disk (e.g., CD), portable hard drive, laptop, or any device that can access the Internet or any other network or external system) is prohibited while accessing the Source Code Computer—except that the Receiving Party's counsel and Experts may bring one non-networked laptop or tablet computer per reviewer (with any internet, network, and camera capabilities disabled), into the secure room with the Source Code Computer for purposes of taking notes only. Receiving Party counsel will make such laptop or tablet available for inspection (to confirm that the camera has been covered and/or disabled) prior to and during any source code review. This section does not prevent or prohibit the Receiving Party's counsel or Experts from possessing wearable devices such as smartwatches or fitness trackers while accessing the Source

Code Computer, provided that such wearable devices are not capable of independently accessing the Internet and do not have any camera or audio recording capability. All persons entering the secure facility must agree to submit to reasonable security measures to ensure they are not carrying any prohibited items before they will be given access to the Source Code Computer. The Producing Party may visually monitor the activities of the Receiving Party from outside the room in which the Source Code Computer is located, but only to ensure that (1) no unauthorized electronic records of the Source Code and no information concerning the Source Code are being created or transmitted in any way and/or (2) no electronic device has access to a camera during the Source Code review. The Producing Party must remain at such a distance as to avoid viewing notes or other work product generated by the Receiving Party and at such a distance to allow the Receiving Party to carry on quiet conversation without being overheard by the Producing Party. This distance requirement does not prevent or prohibit the Producing Party from checking and/or confirming that no electronic device has access to a camera during the Source Code review. The Producing Party shall not otherwise monitor, track, or copy the Receiving Party's Source Code review.

4.3.8 Following review of the Source Code Computer, the Receiving Party may request that the Producing Party (1) print and produce paper copies of limited portions of the Source Code and (2) provide password-protected PDF files of the printouts on up to 3 encrypted USB drives if it is reasonably necessary for the preparation of contentions, court filings, expert reports, deposition, or trial. The Receiving Party may request printing of 750 pages total, with no more than 30 contiguous pages. If the Receiving Party reasonably believes it is necessary to print more, the parties shall meet and confer in good faith to resolve the issue. To ensure the proper pages requested are printed, the Producing Party will provide the ability for the Receiving Party to save files for printing as PDFs to a folder on the

Source Code Computer and the Receiving Party will identify source code files for printing by saving the files in the folder on the Source Code Computer for printing, and include headers or footers with full file name and file path of any printouts. Within five (5) days of a request, the Producing Party shall either (i) produce the requested printouts to the Receiving Party; or (ii) inform the Receiving Party that it objects to the request as excessive or not submitted for a permitted purpose. If the Producing Party objects, the parties shall comply with Local Rule 37-1 et seq., and meet and confer to attempt to resolve the objection within five (5) days of the objection. If after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection (where such meet-and-confer need not take place in person), the parties shall comply with Local Rule 37-2 et seq. and Section 3 of Judge McCormick's Procedures ("Informal Telephonic Conference in Discovery Disputes") to present the dispute to the Court. Contested copies of Source Code (PDF files or hardcopy printouts) do not need to be produced to the Receiving Party until the matter is resolved by the Court. The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules. For the avoidance of doubt, printing of Source Code shall not be used as a substitute for review of the Source Code in the first instance on the Source Code Computer.

4.3.9 The Producing Party will affix the proper Bates labeling and confidentiality designation to any printed copies to be produced to the Receiving Party and mark such printed copies with file names and line numbers that correspond to the file names and line numbers visible during inspection of the Source Code Computer. Printouts or copies of Source Code may only be made by the Producing Party. Before the first set of printed copies are made, the parties will negotiate in good faith a reasonable number of copies and the format of copies.

4.3.10 The Receiving Party's outside counsel of record and Experts must maintain and store any paper copies of the Source Code or any notes, analyses, or descriptions of Source Code ("Source Code Material") under their direct control in a secured locked area in a manner that prevents unauthorized access to the Source Code Material. The Receiving Party may also temporarily keep Source Code Material at (i) the Court during proceedings related to the Source Code, (ii) the sites where any depositions relating to the Source Code are taken, on the dates of the depositions, and (iii) if in a secured locked container, any secure intermediate location reasonably necessary to transport the printouts (e.g., a hotel prior to a Court proceeding or deposition). The Source Code Material may only be delivered by the Receiving Party at the direction of a person authorized under Section 4.2, *supra*, to another person authorized under Section 4.2, *supra*, on paper via hand carry, Federal Express, or other similarly reputable courier. Source Code Material may not be transported or transmitted over a network of any kind, including a LAN, intranet, or the Internet. Source Code Material may only be transported for the purposes outlined in this section and subject to the restrictions set forth herein.

4.3.11 Any paper copies of Source Code Material used during an in-person deposition shall be retrieved by the Producing Party at the end of each day and must not be given to or left with a court reporter or any other unauthorized individual. Source Code printouts that are marked as deposition exhibits shall not be attached to deposition transcripts. Regardless of whether the deposition is held in-person or remotely, the deposition record will identify the exhibit by its production numbers.

4.3.12 The Receiving Party's outside counsel of record and Experts must not copy, photograph, e-mail, transmit, upload, download, print, or otherwise duplicate or reproduce any portion of Source Code while inspecting the Source Code on the Source Code Computer. Nothing in this section prevents the Receiving Party's

outside counsel of record or Experts from taking notes, but they may not copy or transcribe verbatim any portion of the Source Code into the notes (names, such as file, package, and/or function names, may be referenced, but may not be used to replicate the Source Code in the notes). Additionally, as set forth above in Section 4.3.8, *supra*, the Receiving Party's outside counsel of record or Experts may request printouts of portions of the Source Code.

4.3.13 The Receiving Party shall maintain a log with respect to all copies of Source Code in its possession or in the possession of its retained Experts, including the names of the recipients of any copies and the locations where the copies are stored. A copy of the log must be made available for inspection by the Producing Party at the Producing Party's request. To the extent the Producing Party has a good-faith concern about the security of Source Code, the Receiving Party, upon request, shall provide reasonable descriptions not more than two (2) times per year of the security measures employed by the Receiving Party and identity of any person that receives a copy of any portion of the source code.

4.3.14 Within sixty (60) days after the issuance of a final, non-appealable decision resolving all issues in the case, the Receiving Party must serve upon the Producing Party the log and serve upon the Producing Party a written confirmation that all paper copies of the Producing Party's Source Code as well as documents, pleadings, reports, and notes reflecting or referring to such Source Code have been destroyed.

4.3.15 Access to and review of the Source Code shall be strictly for the purpose of investigating the claims and defenses at issue in the above-captioned case. No person shall review or analyze any Source Code for purposes unrelated to this case, nor may any person use any knowledge gained as a result of reviewing Source Code in this case for any other purpose, including in any other pending or future dispute, proceeding, or litigation.

4.3.16 Upon reasonable advance request by the Receiving Party, the Producing Party shall make available a breakout room or other private space, adjacent to or in reasonably close proximity to the room containing the Source Code Computer(s), in which the Receiving Party's outside counsel of record and Experts may confer, take breaks, and review non-Source Code materials, provided that such non-Source Code materials are not reviewed on devices prohibited from being brought into the secure facility as set forth in Section 4.3.7, *supra*.

4.3.17 To the extent portions of documents designated as "HIGHLY CONFIDENTIAL—SOURCE CODE" are quoted in an electronic copy or image of a document which, pursuant to the Court's rules, procedures, or orders, must be filed or served electronically ("Source Code Filing"), either (1) the entire Source Code Filing will be stamped and treated as "HIGHLY CONFIDENTIAL—SOURCE CODE" or (2) those pages containing quoted Source Code Material will be separately stamped and treated as "HIGHLY CONFIDENTIAL—SOURCE CODE." No electronic copies of Source Code Material shall be made except as reasonably necessary to create documents that must be filed or served electronically (such as expert reports, discovery responses and motions, summary judgment motions, demonstrative or other exhibits, or infringement contentions), provided that such documents include the minimal amount of Source Code Material reasonably necessary, are appropriately marked, and, if filed, are filed under seal. Wherever possible, the Receiving Party will make reasonable and good-faith efforts to limit information to references to production numbers, file names, and line numbers. Images or copies of Source Code Material shall not be included in correspondence between the parties (references to production numbers shall be used instead) and shall be omitted from pleadings and other papers unless reasonably necessary. If included, the documents must be appropriately marked, restricted to those entitled to access, include the minimal necessary amount, and, if filed, be filed under seal. The

communication and/or disclosure of electronic files containing any portion of Source Code Material shall at all times be limited to individuals who are authorized to see Source Code Material under the provisions of this Protective Order. Additionally, all electronic copies must be labeled "HIGHLY CONFIDENTIAL—SOURCE CODE" and must only be exchanged via secure, encrypted file transfer. Electronic images should not be maintained separate and apart from the filing for which they were created.

## 5. DISCLOSURE OF EXPERT WITNESSES AND CONSULTING EXPERTS

5.1 Subject to the provisions of this Order, information designated by the Producing Party under any category of Protected Information may be furnished and disclosed to a Receiving Party's Expert (either a testifying expert or consulting expert) and their necessary support personnel pursuant to the approval process described below.

5.2 The party desiring to disclose a Producing Party's Protected Information to an Expert must provide the following information to the Producing Party:

5.2.1 An executed version of Attachment A for that Expert;

5.2.2 A disclosure setting forth the name, address, curriculum vitae, and current employer of that Expert.

5.2.3 A disclosure of each person or entity from whom the Expert has received compensation or funding for work in his or her areas of expertise or to whom the Expert has provided professional services for the preceding five (5) years.

5.2.4 A disclosure of any litigation in connection with which the Expert has offered expert testimony for the preceding five (5) years.

5.2.5 For each individual working under the direction of a disclosed Expert who will access Protected Information (including individuals who will access the Source Code Computer), the following information must be provided to the

Producing Party: (i) an executed version of Attachment A for that individual; (ii) the individual's name, current employer, and role in supporting the Expert's work in this action; and (iii) the name of the Expert under whose direction the individual will work. Individuals disclosed under this Section 5.2.5 shall not count against the three-Expert limit set forth in Section 4.3.5, but may access the Source Code Computer only while working under the direction and supervision of the disclosed Expert whom they support.

5.3 The Producing Party shall have seven (7) days after receiving the information identified in the preceding section to object in writing to the disclosure. No Protected Information shall be disclosed to such Expert(s) until after the expiration of the foregoing notice period and resolution of any objection.

5.4 A party objecting to disclosure of Protected Information to an Expert shall state with particularity the ground(s) for the objection. The objecting party's consent to the disclosure of Protected Information to an Expert shall not be unreasonably withheld, and its objection must be based on that party's good faith belief that disclosure of its Protected Information to the Expert will result in specific business or economic harm to that party.

5.5 If the Producing Party objects, the parties shall comply with Local Rule 37-1 et seq., and meet and confer to attempt to resolve the objection within three (3) days of the objection. If after meeting and conferring, the Producing Party and the Receiving Party cannot resolve the objection (where such meet-and-confer need not take place in person), the parties shall comply with Local Rule 37-2 et seq. and Section 3 of Judge McCormick's Procedures ("Informal Telephonic Conference in Discovery Disputes") to present the dispute to the Court. The Producing Party shall have the burden of showing to the Court "good cause" for preventing the disclosure of its Protected Information to the Expert. If the Producing Party fails to seek relief from the Court within seven (7) days of the meet and confer, such failure shall operate

as an approval of disclosure of Protected Information to the Expert. The parties agree to cooperate in good faith to shorten the time frames set forth in this paragraph if necessary to abide by any discovery or briefing schedules.

**6. PROHIBITED ACTIVITIES BY PERSONS WITH ACCESS TO PROTECTED INFORMATION**

Persons described in Sections 4.2.1 and 4.2.2, *supra*, who receive Protected Information designated as “HIGHLY CONFIDENTIAL—ATTORNEYS’ EYES ONLY” or “HIGHLY CONFIDENTIAL—SOURCE CODE” shall not, during the pendency of this action or for one (1) year after its conclusion (including any appeals), be involved in:

6.1 Patent-Prosecution-Related Work for any party or its Affiliates including:

6.1.1 the drafting, directing of drafting, or providing input into the drafting of patent claims relating to the claimed subject matter in the patents asserted by the Producing Party in this action, any patent or application claiming priority to the patents asserted by the Producing Party in this action; or

6.1.2 the representation of a patent applicant or patent owner before any patent office in connection with the future prosecution, *ex parte* reexamination, *inter partes* review, post-grant review, or reissue proceeding of a patent relating to the subject matter outlined in Section 6.1.1, *supra*, as of the date this Order is granted except as set forth below. For avoidance of doubt, this does not preclude representation of a party challenging a patent before a domestic or foreign agency, nor does it prohibit counsel for the Receiving Party from participating in and representing a patent applicant or patent owner (including the Receiving Party) in such proceeding provided that any involvement such counsel has with amending claims would be strictly limited to responding to any argument the Producing Party makes in the proceeding.

6.2 For the avoidance of doubt, individual outside counsel for the parties and individual support staff who have been exposed to Protected Information may not participate in the activities set forth in Section 6.1, *supra*, but this prohibition shall not apply to individual outside counsel for the parties and individual support staff to whom neither the substance nor the content of Protected Information has been disclosed provided that counsel creates an "ethical wall" between those individuals and individuals with access to Protected Information.

## 7. CHALLENGES TO CONFIDENTIALITY DESIGNATIONS

7.1 The parties shall use reasonable care when designating documents or information as Protected Information. Nothing in this Order shall prevent a Receiving Party from contending that any documents or information designated as Protected Information have been improperly designated. A Receiving Party may at any time request that the Producing Party cancel or modify the Protected Information designation with respect to any document or information contained therein.

7.2 A party shall not be obligated to challenge the propriety of a designation of any category of Protected Information at the time of production, and a failure to do so shall not preclude a subsequent challenge thereto. Such a challenge shall be written, shall be served on counsel for the Producing Party, and shall particularly identify the documents or information that the Receiving Party contends should be differently designated. Any such objection must set forth in detail the grounds on which it is based.

7.3 For a challenge under Section 7.2, *supra*, the parties shall use their best efforts to resolve promptly and informally such disputes. If an agreement cannot be reached, the parties shall resolve the dispute in compliance with Local Rule 37-1 et seq. and Section 3 of Judge McCormick's Procedures ("Informal Telephonic Conference in Discovery Disputes"). The burden of demonstrating the confidential nature of any information shall at all times be and remain on the Producing Party.

7.4 Until a determination by the Court, the information at issue shall be treated as having been properly designated and subject to the terms of this Order.

**8. LIMITATIONS ON THE USE OF PROTECTED INFORMATION**

8.1 All Protected Information shall be held in confidence by each person to whom it is disclosed, shall be used only for purposes of this litigation, shall not be used for any other purpose or in connection with any other legal proceeding, and shall not be disclosed to any person who is not entitled to receive such information as herein provided. All produced Protected Information shall be securely maintained so as to preclude access by persons who are not entitled to receive such information.

8.2 Except as may be otherwise ordered by the Court, any person may be examined as a witness at depositions and trial and may testify concerning all Protected Information of which such person has prior knowledge subject to the restrictions and provisions herein:

8.2.1 A present director, officer, and/or employee of a Producing Party may be examined and may testify concerning all Protected Information which has been produced by that party and of which the witness has personal knowledge;

8.2.2 A former director, officer, agent and/or employee of a Producing Party may be examined and may testify concerning all Protected Information of which he or she has personal knowledge if he or she has executed the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Attachment A or if Section 8.2.3, *infra*, applies; and

8.2.3 Non-parties may be examined or testify concerning any document containing Protected Information of a Producing Party which appears on its face to have been received from or communicated to the non-party as a result of any contact or relationship with the Producing Party, was attached to such a document, or is a document that the non-party testifies to having prior knowledge of.

8.2.4 Any person other than the witness, his or her attorney(s), or any person qualified to receive Protected Information under this Order shall be excluded from the portion of the examination concerning such information, unless the Producing Party consents to persons other than qualified recipients being present at the examination. If the witness is represented by an attorney who is not qualified under this Order to receive such information, then prior to the examination, the attorney must provide a signed statement, in the form of Attachment A hereto, that he or she will comply with the terms of this Order and maintain the confidentiality of Protected Information disclosed during the course of the examination.

8.3 All transcripts of depositions, exhibits, answers to interrogatories, pleadings, briefs, and other documents submitted to the Court that have been designated as Protected Information, or which contain information so designated, shall be submitted for filing consistent with Local Rule 79-5 and the procedures set forth in Section 13.7 below.

8.4 Outside attorneys of record for the parties are hereby authorized to be the persons who may retrieve confidential exhibits and/or other confidential matters filed with the Court upon termination of this litigation without further order of this Court, and are the persons to whom such confidential exhibits or other confidential matters may be returned by the Clerk of the Court, if they are not so retrieved. No material or copies thereof so filed shall be released except by order of the Court, to outside counsel of record, or as otherwise provided for hereunder.

8.5 Protected Information shall not be distributed, disseminated, or otherwise produced by a Receiving Party, except for transmission to qualified recipients, without the written permission of the Producing Party, or, in the alternative, by further order of the Court.

8.6 At the request of any party, the original and all copies of any deposition transcript, in whole or in part, shall be marked HIGHLY CONFIDENTIAL—

ATTORNEYS' EYES ONLY or HIGHLY CONFIDENTIAL—SOURCE CODE by the reporter. This request may be made orally during the deposition or in writing within fourteen (14) days of receipt of the final certified transcript. Deposition transcripts shall be treated by default as HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY until the expiration of the time to make a confidentiality designation. Any portions so designated shall thereafter be treated in accordance with the terms of this Order.

8.7 Absent agreement, Protected Information may not be exported outside the United States or released to any foreign national (even if within the United States) unless the foreign national (1) is a Green Card holder, (2) working in the United States pursuant to an H-1B or L-1 visa sponsored by the Receiving Party's law firm, (3) working in the United States pursuant to TN status/visa (i.e., employment authorization under NAFTA/USMCA) authorized by the Receiving Party's law firm, (4) directly employed by the Receiving Party's law firm to provide support or legal representation to the firm's clients and who are otherwise unaffiliated with the Receiving Party, or (5) an outside consultant, vendor, or Expert retained by the Receiving Party in connection with this litigation who is working in the United States pursuant to a valid H-1B or L-1 visa sponsored by that individual's own employer, provided that such individual is otherwise entitled to receive Protected Information under this Order and is disclosed by the Receiving Party under the requirements set forth in Section 5, *supra*, as applicable. Should any Protected Information be subject to export outside of the United States, the Receiving Party shall comply with all applicable laws and regulations relating to the export and agrees not to knowingly export, reexport, or transfer the Protected Information of the Producing Party without first obtaining all required United States or any other applicable authorizations or licenses.

**9. NON-PARTY USE OF THIS PROTECTIVE ORDER**

9.1 A non-party producing information or material voluntarily or pursuant to a subpoena or a court order may designate such material or information pursuant to the terms of this Order.

9.2 A non-party's use of this Order to protect its Protected Information does not entitle that non-party access to the Protected Information produced by any party in this case.

**10. INADVERTENT PRODUCTION**

10.1 A designation contemplated by this Order may be made at any time. Inadvertent or unintentional production of information that should have been designated shall not be deemed a waiver in whole or in part of a claim for confidential treatment. A party that inadvertently or unintentionally produced information without properly designating it under this Order may provide a replacement that is properly designated under this Order, or request its return or destruction by promptly notifying the recipients in writing. The recipients shall then return or destroy all copies of the inadvertently or unintentionally produced information that should have been so designated.

10.2 Nothing in this Order shall require production of information that a party contends is protected from disclosure by the attorney-client privilege, the work product immunity, or other privilege, doctrine, right, or immunity.

10.3 If information subject to a claim of attorney-client privilege, work product immunity, or other privilege, doctrine, right, or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity. Any party that inadvertently produces materials protected by the attorney-client privilege, work product privilege, or other privilege, doctrine, right, or immunity may obtain the return of those materials by notifying the recipient(s).

The recipient(s) shall promptly gather and return all copies of the privileged material to the Producing Party, except for any pages containing privileged markings by the recipient, which pages shall instead be destroyed and certified as such by the recipient to the Producing Party. The record of the identity and nature of an inadvertently produced document may not be used for any purpose other than in preparation of a motion to compel the production of the same document in this action. No information in an inadvertently produced document may be used or relied upon for any other purpose in this litigation until the Court so orders. After the return of the document(s), the Receiving Party may challenge the Producing Party's claim(s) of privilege or work-product by making a motion to the Court.

10.4 Nothing in this Order shall be construed to effect an abrogation, waiver or limitation of any kind on the rights of each of the parties to assert any applicable discovery or trial privilege or protection. The inadvertent production by a party of any document or information subject to the attorney-client privilege, work-product protection, or any other applicable privilege or protection, despite the Producing Party's reasonable efforts to prescreen such document or information prior to production, will not waive the applicable privilege and/or protection if a request for return of such inadvertently produced Discovery Material is made promptly after the Producing Party learns of its inadvertent production.

**11. UNAUTHORIZED DISCLOSURE**

11.1 Should any Protected Information be disclosed by the Receiving Party to any person not authorized to receive such Protected Information under this Order, then that Receiving Party must immediately: (a) notify in writing the Producing Party of the unauthorized disclosures; (b) use its best efforts to retrieve all unauthorized copies of the Protected Information; (c) inform the person or persons to whom unauthorized disclosures were made of all the terms of this Order, and (d) request

such person or persons to execute the "Acknowledgment and Agreement to Be Bound" that is attached hereto as Attachment A.

**12. USE OF AI TOOLS**[1]

No party, and no person or entity authorized to receive materials under this Order, may input, upload, submit, or otherwise provide any Discovery Material—whether or not designated as Protected Information—into any modern artificial intelligence platform, including any generative, analytical, or large language model-based tool ("AI Tool"), unless all requirements of Section 12.1 and Section 12.2 are satisfied.

12.1 A party or person subject to this Order may use an AI Tool with Discovery Material only if the AI Tool is provided on an enterprise or commercial tier subscription and the Receiving Party has not configured the AI Tool to:

a) retain or store inputs (including prompts, documents, and metadata) for use beyond the session necessary to deliver the requested service, except as provided in Section 12.7.2, *infra*. For clarity, this requirement does not prohibit the use of AI Tools that maintain a history of a user's prompts and/or sessions, provided that any prompts containing Protected Information shall not be disclosed to any person not authorized to receive Protected Information under this Order;

b) use, incorporate, or reference inputs to train, fine-tune, retrain, or otherwise improve any AI model or system, whether that of the vendor or any third party, except as provided in Section 12.7.2, *infra*. For clarity, this requirement does not prohibit the use of AI tools that incorporate or reference a user's past prompts to optimize responses to subsequent prompts by the same user, provided that such AI tools (1) do not use, reference, or incorporate

[1] Amazon agrees to this provision on the use of AI tools for the purposes of the above-captioned matter only.

prompts or other inputs received from one user to respond to prompts from any other user; and (2) otherwise comply with all of the requirements in Section 12;

c) disclose inputs to any third party, except where strictly essential to facilitate delivery of the service; any such third party must be bound by confidentiality obligations no less protective than those required by this Order;

d) allow any human employee, contractor, or reviewer of the AI vendor to read, access, or review input content for any purpose other than immediate technical support explicitly requested by the party; and

e) make inputs or retained outputs accessible to any person not authorized to receive Protected Information under this Order.

12.2 In addition to the requirements of Section 12.1, a party or person may use an AI Tool with Discovery Material only if the AI vendor is contractually obligated to afford the Receiving Party the right to remove or delete all Discovery Material and AI-generated outputs from the vendor's systems upon request, and in any event no later than sixty (60) days following the entry of a final non-appealable judgment or order, or the complete settlement of all claims asserted against all parties in this action (the "Conclusion of This Action"). The Receiving Party shall: (a) within fourteen (14) days following the Conclusion of This Action, take all reasonable steps necessary to ensure deletion of all Protected Material uploaded and/or output by AI tools during this action. The Receiving Party may meet this requirement by submitting a deletion request to the vendor if the vendor accepts deletion requests during the term of its vendor agreement with the Receiving Party; or, if the AI vendor does not accept such requests, by manually deleting all uploaded information over the AI tool's user interface; and (b) within sixty (60) days following the Conclusion of This Action, provide the Producing Party with written certification and documentation demonstrating that the Receiving Party took all reasonable steps

necessary to delete all Discovery Material uploaded to AI tools using the procedures and means provided by the vendor(s), as applicable.

12.3 Any party intending to use an AI Tool with Discovery Material must, prior to such use:

a) retain written documentation (including the vendor's data processing agreement, terms of service, or equivalent contractual instrument) demonstrating that the vendor's commitments satisfy Sections 12.1 and 12.2; and

b) make such documentation available to the Producing Party within five (5) business days of a written request.

12.4 A party that intends to use an AI Tool with Discovery Material produced by the other party must provide written notice to the Producing Party at least seven (7) business days before first use, except with respect to AI Tools pre-approved under Section 12.6. Such notice shall identify:

a) the name, version, and operator of the AI Tool;

b) the categories of Discovery Material the Receiving Party intends to process; and

c) a representation that Sections 12.1 and 12.2 are satisfied, accompanied by the documentation required by Section 12.3(a).

The Producing Party shall have five (5) business days to object in writing, stating with particularity the basis for objection. If a timely objection is served, the parties shall meet and confer within three (3) business days. If the dispute is not resolved, the Receiving Party may not proceed with such AI Tool use until the Court resolves the dispute pursuant to Local Rule 37-1 et seq. and Section 3 of Judge McCormick's Procedures.

12.5 Notwithstanding any other provision of this Section 12, no party may use any AI Tool, regardless of vendor contractual protections, to review, analyze,

summarize, or otherwise process any Discovery Material designated as HIGHLY CONFIDENTIAL—SOURCE CODE. This prohibition is absolute and applies whether such Source Code material is accessed on the Source Code Computer, in printed form, in electronic excerpts, or in any other form or medium.

12.6 The parties agree that the following AI Tools, when used at the enterprise or commercial tier identified below and subject to the configuration requirements in this subsection, satisfy the requirements of Sections 12.1 and 12.2 based on each vendor's published enterprise terms of service, data processing addendum, and security certifications as of the Effective Date of this Order. Use of any AI Tool pre-approved under this Section 12.6 shall not require the pre-use notice otherwise required under Section 12.4.

a) Microsoft Copilot, including Microsoft 365 Copilot and Copilot Cowork, when deployed within a Microsoft 365 Enterprise or Business tenant governed by Microsoft's enterprise Data Protection Addendum (and not the free or consumer-facing Copilot product available at copilot.microsoft.com), satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's tenant is configured to disable any consumer connectors or web-grounding features that would route Discovery Material outside the enterprise data-processing boundary; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Copilot product for use with Discovery Material.

b) Lexis+ AI (LexisNexis), at the firm's standard commercial or enterprise subscription tier, satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's account is configured under LexisNexis's then-current commercial terms and its published zero-training and zero-retention commitments applicable to user-submitted content; and (ii) the Receiving

Party has not enabled any consumer or free-tier LexisNexis AI product for use with Discovery Material.

c) Westlaw AI and CoCounsel (Thomson Reuters), at the firm's standard commercial or enterprise subscription tier, satisfy the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's account is governed by Thomson Reuters's then-current commercial terms, including its non-retention API arrangements with underlying model providers and its contractual prohibition on third-party model providers retaining or training on customer data; and (ii) the Receiving Party has not enabled any consumer or free-tier Westlaw AI or CoCounsel product for use with Discovery Material.

d) Patlytics (patlytics.ai), at the firm's standard commercial or enterprise subscription tier, satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's account is configured under Patlytics's then-current customer terms, including its published non-training commitment and its non-retention agreements with underlying third-party AI services; and (ii) the Receiving Party has not enabled any consumer or free-tier Patlytics product for use with Discovery Material.

e) Perplexity Enterprise (Pro or Max tier) satisfies the requirements of Sections 12.1 and 12.2, based on Perplexity's Enterprise Terms of Service, Data Processing Addendum, and SOC 2 Type II attestation as of the Effective Date of this Order, provided that: (i) the Receiving Party's Enterprise instance has Zero Data Retention enabled or, alternatively, has configured the shortest available data retention period; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Perplexity product for use with Discovery Material.

f) Claude (Anthropic), at the firm's standard commercial or enterprise subscription tier, satisfies the requirements of Sections 12.1 and 12.2, provided

that: (i) the Receiving Party's subscription is configured to disable any consumer connectors or web-grounding features that would route Discovery Material outside the enterprise data-processing boundary; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Claude product for use with Discovery Material.

g) Harvey (harvey.ai) satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's subscription is configured to disable any consumer connectors or web-grounding features that would route Discovery Material outside the enterprise data-processing boundary; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Harvey product for use with Discovery Material.

h) Legora aOS (Legora) satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's subscription is configured to disable any consumer connectors or web-grounding features that would route Discovery Material outside the enterprise data-processing boundary; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Legora product for use with Discovery Material.

i) Crane Patents satisfies the requirements of Sections 12.1 and 12.2, provided that: (i) the Receiving Party's subscription is configured to disable any consumer connectors or web-grounding features that would route Discovery Material outside the enterprise data-processing boundary; and (ii) the Receiving Party has not enabled any consumer-tier or non-Enterprise Crane Patents product for use with Discovery Material.

12.7.1 No party or authorized recipient of Discovery Material shall use any Discovery Material, or any AI-generated output derived therefrom, within any AI Tool workspace, project, index, session, or other AI-Tool-hosted environment that is accessed, maintained, or used for any matter other than this action. Each party

shall configure its use of AI Tools such that Discovery Material and any AI-generated outputs derived therefrom are logically segregated from unrelated matters, and shall not carry over, migrate, or otherwise make available such Discovery Material or derived outputs to any workspace, project, index, or session unrelated to this action.

12.7.2 For the avoidance of doubt, nothing in this Section 12 prohibits an AI Tool from retaining Discovery Material or AI-generated outputs derived therefrom within a single matter-specific workspace, project, index, or session dedicated to this action for the purpose of enabling follow-up queries, retrieval-augmented generation, context-preserved analysis, or similar within-matter functionality, provided that (i) such retention is confined to the matter-specific environment and does not train, fine-tune, or otherwise update the underlying model or any model used by any other party, matter, or user; and (ii) the matter-specific environment remains subject to the deletion obligations set forth in Section 12.2.

**13. MISCELLANEOUS PROVISIONS**

13.1 Any of the notice requirements herein may be waived, in whole or in part, but only in writing signed by the attorney-in-charge for the party against whom such waiver will be effective.

13.2 Final Judgment or Settlement

13.2.1 Within sixty (60) days after the entry of a final non-appealable judgment or order, or the complete settlement of all claims asserted against all parties in this action, each party shall either return or destroy all Protected Information it has received, and shall destroy in whatever form stored or reproduced, all copies, compilations, and any other format reproducing Protected Information. Notwithstanding this provision, outside litigation counsel of record are not required to delete archival copies of all pleadings, motions and trial briefs (including all supporting and opposing papers and exhibits thereto), written discovery requests and responses (and exhibits thereto), deposition transcripts (and exhibits thereto), trial

transcripts, and exhibits offered or introduced into evidence at any hearing or trial, correspondence, and their attorney work product which refers or is related to any Discovery Material designated as "CONFIDENTIAL" for archival purposes only. If a party opts to destroy Discovery Material designated as "CONFIDENTIAL," the party must provide a Certificate of Destruction to the Producing Party.

13.2.2 All archival copies that contain Protected Information shall remain subject to this Order.

13.2.3 In the event that a party is dismissed before the entry of a final non-appealable judgment or order, this same procedure shall apply to any Protected Information received from or produced to the dismissed party.

13.3 Other Proceedings. By entering this order and limiting disclosure of information from this case, the Court does not intend to preclude another court from finding that information may be relevant and subject to disclosure in another case. Any person or party subject to this order who becomes subject to a request or order to disclose another party's Protected Information shall (i) promptly notify in writing that party of the request or order (including a copy of the request or order) so that the party may have an opportunity to appear and be heard on whether that information should be disclosed, (ii) promptly notify in writing the person who caused the request or order in the other case that the information is subject to this Protective Order (including a copy of this Protective Order), and (iii) shall not produce any Protected Information before a determination by the court, unless it obtains the Producing Party's permission.

13.4 Testifying Experts shall not be subject to discovery of any draft of their reports in this case, and such draft reports, notes, outlines, or any other writings leading up to an issued report(s) in this litigation are exempt from discovery, regardless of the form in which such drafts are recorded. In addition, communications between counsel for a party and that party's testifying Expert who is required to

provide a report under Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure are exempt from discovery, regardless of the form of the communications, except to the extent that the communications (i) relate to compensation for the Expert's study or testimony; (ii) identify facts, data, or assumptions that counsel provided and that the Expert considered in forming the opinions to be expressed; or (iii) identify assumptions that counsel provided and that the Expert relied on in forming the opinions to be expressed.

13.5 No party shall be required to identify on their respective privilege log any document or communication with that party's outside counsel dated on or after the filing of the lawsuit which, absent this provision, the party would have been obligated to so identify on said privilege log. The parties shall exchange their respective privilege document logs at a time to be agreed upon by the parties following the production of documents.

13.6 This Order is entered without prejudice to the right of any party to apply to the Court at any time for additional protection, or to relax or rescind the restrictions of this Order, when convenience or necessity requires. Furthermore, without application to this Court, any party that is a beneficiary of the protections of this Order may enter a written agreement releasing any other party hereto from one or more requirements of this Order even if the conduct subject to the release would otherwise violate the terms herein.

13.7 A Producing Party that seeks to file under seal any Protected Information must comply with Local Rule 79-5 and Section 15 of Judge McCormick's Procedures ("Stipulated Protective Orders"). Protected Information may only be filed under seal pursuant to a court order authorizing the sealing of the specific Protected Information at issue. If a Producing Party's request to file Protected Information under seal is denied by the Court, then the Receiving Party may file the information in the public record unless otherwise instructed by the Court.

13.8 The United States District Court for the Central District of California is responsible for the interpretation and enforcement of this Order. After termination of this litigation, the provisions of this Order shall continue to be binding except with respect to those documents and information that become a matter of public record. This Court retains and shall have continuing jurisdiction over the parties and recipients of the Protected Information for enforcement of the provision of this Order following termination of this litigation. All disputes concerning Protected Information produced under the protection of this Order shall be resolved by the United States District Court for the Central District of California.

13.9 Nothing in this Order shall preclude or impede outside litigation counsel of record's ability to communicate with or advise their client in connection with this litigation only based on such counsel's review and evaluation of Protected Information, provided however, that such communications or advice shall not disclose or reveal the substance or content of any Protected Information other than as permitted under this Order.

13.10 This Order applies to pretrial discovery. Nothing in this Order shall be deemed to prevent the parties from introducing Protected Information into evidence at trial, subject to any pretrial order issued by this Court.

13.11 Each of the parties agrees to be bound by the terms hereof upon entry of this Order by the Court.

IT IS SO ORDERED.

Dated: September 28, 2026

Honorable Douglas F. McCormick
United States Magistrate Judge

ATTACHMENT A

ACKNOWLEDGMENT AND AGREEMENT TO BE BOUND

I, _______________________________, declare under penalty of perjury that I have read in its entirety and understand the Stipulated Protective Order that was issued by the United States District Court for the Central District of California in the case of *Corent Technology, Inc. v. Amazon Web Services, Inc.*, 8:26-cv-00194-JVS-(DFMx). I agree to comply with and to be bound by all the terms of this Stipulated Protective Order and I understand and acknowledge that failure to so comply could expose me to sanctions and punishment in the nature of contempt. I solemnly promise that I will not disclose in any manner any information or item that is subject to this Stipulated Protective Order to any person or entity except in strict compliance with the provisions of this Order. I further agree to submit to the jurisdiction of the United States District Court for the Central District of California for the purpose of enforcing the terms of this Stipulated Protective Order, even if such enforcement proceedings occur after termination of this action.

Printed name: _________________________________

Title: _________________________________________

Address: ______________________________________

Signature: _____________________________________

Date: _________________________________________